## CORA D. LECLAIR *vs.* TEXTRON MILLS, INC.

JULY 27, 1950.

PRESENT: Flynn, C.J., Capotosto, Baker and O'Connell, JJ.

BAKER, J. This is a petition for extended medical care and expenses filed by an employee against her employer under the workmen's compensation act, general laws 1938, chapter 300. A decree denying and dismissing the petition was entered by the superior court and from that decree petitioner has duly prosecuted her appeal to this court.

The pertinent part of the statute relied on by petitioner, G. L. 1938, chap. 300, art. II, §5, as amended by public laws 1941, chaps. 1051 and 1055, and by P. L. 1942, chap. 1226, reads as follows:

"The employer shall furnish reasonable medical, dental, and hospital services, and medicines when they are needed; *provided, however,* that the charge for medical and dental services and medicines, exclusive of hospital services, shall not exceed the sum of $300.00 in the case of an injured employee not receiving hospital treatment, or receiving hospital treatment for not more than 14 days, and shall not exceed the sum of $500.00 in the case of an employee receiving hospital treatment for more than 14 days; *provided, however,* in unusual cases where the amounts stipulated by this section are not sufficient to cover specialized or prolonged treatment necessary to effect cure or rehabilitation of the injured employee, the director of labor may order payment of charges for medical and dental services and medicines beyond the stated maxima following hearing upon petition * * *.

When an injury results in no disability or in disability of less than 3 days and the employer refuses or neglects to authorize medical treatment necessary for the repair or cure of physical or mental harm caused by the injury, the director may, upon his own motion or upon petition filed by an interested party, and after hearing as provided for in article III of this chapter, order such medical treatment. * * *

In addition to all other compensation, the injured employee shall receive and the employer shall provide all medical, optical, dental and surgical appliances

and apparatus of any nature, whatsoever, as may be reasonably required to cure and relieve from the effects of the injury, including but not being limited to the following: ambulance and nursing service; eyeglasses; dentures; braces and supports; artificial limbs; crutches and other similar appliances."

From the uncontradicted evidence it appeared in substance that on February 3, 1948 petitioner, while stooping over at her work in the respondent's plant, caught her shoestring on a nail and was thrown to the floor, landing on her back. She arose without aid and complained of pain in her lower back, but worked the rest of the day. Thereafter her back was strapped and she worked at her regular employment until March 4, 1948, but has not worked since that date. During the month when she continued to work her back remained strapped, she received treatments at the plant, and X-ray examinations were made and reported as negative. Several weeks after the accident petitioner went to Dr. George M. Kokolski, an osteopathic physician, who gave her heat treatments and manipulation. A belt was also fitted to her but did not give relief. She complained of pain across the lower back radiating toward the front of her body down both legs and also up the back, and of stiffness in the legs particularly on the right side.

Doctor Kokolski testified that he first attended petitioner March 2, 1948; that she complained of pain in the lower lumbar dorsal area of the back radiating down the right side; that he prescribed belts and gave her diathermy treatments and manipulation. He stopped the manipulation at the suggestion of Dr. Roland Hammond soon after April 9, 1948 but the diathermy treatments were continued up to the time of the hearing in the superior court, namely, November 16, 1949. He also testified that at first he thought the diathermy might effect a cure, but after a month's time as the pain persisted he knew that she would get some palliative relief but would not be cured. In

cross-examination he stated: "Q. Do you agree with Dr. Hammond that the diathermy treatment is solely for temporary relief of pain? A. That is about all it will do."

The testimony of Dr. Roland Hammond disclosed that he first treated petitioner April 9, 1948. Two sets of X rays were taken about six months apart. They both showed that she had a "displacement of the sacrum forward on the 5th lumbar vertebra." He testified that an operation was possible but he did not recommend it in this case. As to diathermy treatments the witness gave the following testimony: "Q. Do diathermy treatments help the situation, Doctor? A. They relieve pain in the beginning and up to a certain length of time which cannot be determined accurately. But after a condition has existed for a considerable period of time, a good many months, there is no prospect of a cure but it does relieve pain temporarily, perhaps for 24 hours. Q. It does relieve pain? A. Yes. Q. And in the beginning you can't tell whether or not it will help with the cure? A. No. Q. So all you can say at this stage is that you are satisfied it is merely relieving the pain now? A. Yes. Q. In the beginning it was impossible to tell whether it was helping or aiding in a cure? A. Yes. Q. Did you advise her to have diathermy treatment in the beginning? A. I advised her to continue them for a while to see the effects of them." There was no other medical testimony.

Exhibits were introduced which showed that the bill for medical treatment alone up to the time of the hearing in the superior court amounted to $467, the larger part of which was for diathermy treatments. In addition there was a charge for belts and braces amounting to $55.

The following findings of fact were made by the trial justice in the decree appealed from: "1. That the petitioner was not hospitalized and has incurred medical bill in excess of $300.00 largely on account of diathermy treatments. 2. That this is not an *unusual* case within the meaning and intent of Section 5, Article II of the Workmen's Compensa-

tion Act. 3. That the said medical services especially said diathermy treatments and manipulations given petitioner were palliative and afforded a temporary relief from pain only. They could not and in fact did not effect a cure or rehabilitation." Findings of fact which are supported by legal evidence are conclusive in the absence of fraud. G. L. 1938, chap. 300, art. III, §6. *Reynolds* v. *Freemasons Hall Co.*, 60 R. I. 343.

It is the petitioner's contention that the trial justice misconceived the evidence; that there is no legal basis for supporting the findings of fact; and that they are incorrect as a matter of law. Upon consideration we find ourselves unable to agree with the petitioner. It is our opinion that the above findings are not erroneous as a matter of law. The provision in the statute in clear and express language permits the director of labor to order payment of charges beyond the stated maxima only in *unusual* cases when the amounts stipulated in the section are not sufficient to cover specialized or prolonged treatment necessary to effect a *cure or rehabilitation* of the injured employee. The word "cure" has a commonly-accepted meaning and the word "rehabilitation" is defined in Webster's New International Dictionary (2d ed.), in the sense used in the statute, as the restoration of one's health and efficiency.

The petitioner has called our attention to the use in other parts of the statute of the phrases "repair or cure" and "cure and relieve." An examination of the statute will show that such phrases are used in connection with specific conditions which do not exist in or apply to the present case. The first phrase applies to a situation when an injury results in no disability or one of less than three days. The second phrase relates only to the providing by an employer of appliances and apparatus of different kinds to assist the injured employee. In this connection it may also be noted that the authorities relied on by the petitioner for the furnishing of extended medical care and expenses deal with statutes containing the words "cure or relieve." Such

authorities therefore are clearly distinguishable from and not applicable in this case. We are bound by the express language of the statute of this state and in our judgment the word "rehabilitation" as used therein is not synonymous with the word "relieve." It is more specific and more demanding in its scope. We find that the trial justice did not commit any error of law in the construction which he placed on the statute.

In regard to the findings of fact, the petitioner argues that the trial justice misconceived the evidence particularly in connection with the finding that this was not an unusual case. She first calls to our attention the fact that at the conclusion of the hearing he stated the case was unusual, but that subsequently in his rescript and in the decree entered he found that it was not unusual. In such a situation we are of the opinion that ordinarily we should accept the considered judgment of the trial justice as expressed in the decree entered by him rather than a statement of a mere impression made from the bench in a discussion of the case with the attorneys. However, in this instance the petitioner's explanation of the situation is that the trial justice, in finally deciding the case, overlooked the testimony of Dr. Hammond given at the hearing and based his finding on this point on a previous report given by that doctor which was not in evidence. Since it appears upon examination that the trial justice in making such finding did rely to some extent on that report, which was not in evidence before him, we cannot give the finding its customary conclusiveness and will disregard it.

But there remains the third finding of fact to the effect that the medical services were of a palliative nature only and could not and did not effect a cure or rehabilitation. It is our opinion that there was legal evidence to support that finding which therefore becomes conclusive. Under the statute upon which the petitioner relies, even assuming the case before the court to be unusual, she must nevertheless meet the condition that the legal maxima allowed is not

sufficient to cover specialized or prolonged treatment necessary to effect her cure or rehabilitation before an order may be made for the payment of extended medical care and services so as to bring about such cure or rehabilitation. The burden was on the petitioner to satisfy by a fair preponderance of the evidence the above condition before she could obtain the relief which she sought. In the case of *Balon* v. *General Cable Corp.*, 76 R. I. 206, this court, under a different factual situation, discussed generally the scope of the statute involved herein.

In our opinion the third finding of the trial justice, reasonably construed, shows that the petitioner failed to establish the necessity, in the past or in the future, of any specialized or prolonged treatment, particularly by way of diathermy, beyond the amount of the legal maxima, in order to effect her cure or rehabilitation. It is our conclusion that such finding is decisive of the case and under the facts herein prevents petitioner from obtaining extended medical care and services beyond the legal maxima. The respondent has expressed a willingness to pay for such care and services up to that limit. In the circumstances we do not find it necessary to pass upon the question of when a petition such as the instant one should properly be brought.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Edward F. Dwyer*, for petitioner.

*Donald A. Kingsley*, for respondent.